UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IVAN KILGORE, | No. 2:11-CV-01745-TLN-DAD P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| DIRECTOR, et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding pro se with a civil rights action seeking relief under 42 U.S.C. § 1983. Defendants Auer, Freitas, King, Molina, Mwai, Okoroike, and Riggs have filed a motion to dismiss plaintiff's amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 25.) Plaintiff filed an opposition to the motion, (ECF No. 27), and defendants filed a reply (ECF No. 28).

**BACKGROUND**

On September 18, 2013, the court screened plaintiff's amended complaint pursuant to 28 U.S.C. § 1915A(a) and found that it stated a cognizable claim against defendants Auer, Freitas, King, Molina, Mwai, Okoroike, and Riggs based upon their alleged failure to adequately treat plaintiff's pain. (ECF No. 17.)

/////

/////

1

**PLAINTIFF'S AMENDED COMPLAINT**

In his amended complaint plaintiff alleges as follows. He underwent a lateral rhinotomy[1] surgical procedure at the University of California, Davis ("UCD") Medical Center on March 15, 2010. (ECF No. 12 at 21.) The following day, he returned to the Outpatient Housing Unit ("OHU") at California State Prison, Sacramento. (Id. at 23.) Defendants Auer, Freitas, King, Molina, Mwai, Okoroike, and Riggs are employed at that prison. (Id. at 5, 7-10.)

On March 17, plaintiff informed defendant Riggs, a nurse practitioner, that he needed sterile cleaning supplies (cotton swabs and antibiotic ointment), a pain assessment evaluation, adequate pain medication, and to see a doctor. (Id. at 25.) Defendant Riggs ignored plaintiff. (Id.) As a result, plaintiff experienced "torturous pain and suffering" and had to clean his surgical incision with toilet paper and his finger. (Id.) The surgical incision eventually became infected. (Id.)

Later that day, plaintiff notified another registered nurse that his pain medication had worn off and that he was in extreme pain. (Id. at 25-26.) After nearly four hours of "excruciating pain and suffering," plaintiff learned that his pain medication had been updated to two Tylenol 3 tablets every six hours. (Id. at 26.) Prison staff provided that dose but the medication did not have a lasting effect; plaintiff's complications worsened over the next twenty-four hours. (Id.)

On March 19, plaintiff informed defendant Okoroike, a registered nurse, that the pain medication he was receiving was ineffective and that he was in severe pain. (Id.) Despite plaintiff's request, defendant Okoroike refused to contact a doctor. (Id.) On March 20, plaintiff submitted an administrative appeal regarding his care to Okoroike, who left work that day without contacting a doctor for plaintiff. (Id. at 26-27.)

At approximately 6:00 p.m. on March 20, defendant Auer (a correctional officer) and defendant Mwai (a nurse) visited plaintiff's cell and attempted to administer the ineffective pain medication. (Id. at 9, 27.) When plaintiff complained that the medication was ineffective, defendants Auer and Mwai became argumentative with him and closed the tray slot on plaintiff's

---

[1] A lateral rhinotomy is a surgical procedure which provides exposure to the inside of the nasal cavity for purposes of removing impacted foreign bodies or tumors from sinuses.

2

1   cell, stating that plaintiff had refused the medication.  (Id. at 28.)

2   Five hours later, defendant Molina, a registered nurse, purposefully sought to frustrate
3   plaintiff by falsely claiming that defendant Mwai had documented that plaintiff had taken his
4   evening dose of pain medication and that plaintiff's medication had expired.  (Id. at 8, 28.)
5   Defendant Molina responded to plaintiff's complaints of pain by sarcastically commenting that he
6   had surgery before "and knew all the bullshit that prisoners ran on staff to get their dope."  (Id. at
7   28.)  Defendant Molina refused to call the doctor until the following morning because he did not
8   want to "get in bad favor by waking [the doctor] up in the middle of the night."  (Id. at 29.)
9   Defendant Molina then "haggled" with plaintiff to take the medication.  (Id.)  The medication
10  provided some relief, but did not completely alleviate plaintiff's pain.  (Id. at 30.)

11  On March 21, plaintiff complained of pain to defendant King, a registered nurse.  (Id. at 8,
12  30.)  Defendant King measured plaintiff's vitals, which indicated that plaintiff's body was in
13  distress.  (Id. at 30.)  King was subsequently approved to issue plaintiff a tab of quick-release
14  morphine every twelve hours, in addition to the Tylenol 3 that plaintiff was receiving two tabs at
15  a time, three times per day.  (Id.)  That combination of medication provided plaintiff with pain
16  relief for a few hours.  (Id. at 31.)

17  On March 22, plaintiff complained of pain when defendant Okoroike brought him Tylenol
18  3.  (Id.)  Later that night, plaintiff had a follow-up appointment to remove stitches at the UCD
19  ENT Clinic.  (Id.)  The ENT physician prescribed Vicodin and cleaning supplies.  (Id.)  When
20  plaintiff returned to OHU, defendant Riggs discarded plaintiff's Vicodin prescription, claiming
21  the prison pharmacy did not offer Vicodin, and provided plaintiff Tylenol 3 and quick release
22  morphine.  (Id. at 32.)  Defendant Freitas, a prison pharmacist, failed to provide alternative pain
23  medications and plaintiff suffered unwarranted pain as a result.  (Id. at 10, 32.)

24  On March 23, plaintiff received the requested and prescribed sterile cleaning supplies.
25  (Id. at 34.)  Later that evening, OHU nursing staff measured plaintiff's vitals and offered him the
26  ineffective pain medications.  (Id. at 35.)  A corrections officer then demanded that the nurse get a
27  doctor, as plaintiff had been in OHU complaining of pain for eight days.  (Id.)  The nurse gave
28  plaintiff two Motrin and contacted a doctor immediately.  (Id.)  "Thereafter, [the nurse] returned

. . . to administer the appropriate pain medications (morphine 'time release') which had effectively controlled [p]laintiff's pain complications and had been noted in his medical file since the 2007 previous lateral rhinotomy procedure." (Id. at 35-36.)

## DEFENDANTS' MOTION TO DISMISS

In the pending motion defense counsel argues that the court should dismiss plaintiff's amended complaint because it fails to allege sufficient facts to state an Eighth Amendment deliberate indifference claim and because defendants are entitled to qualified immunity. (ECF No. 25-1 at 2.) In support of the first argument, defense counsel emphasizes that: defendants provided plaintiff the prescribed Tylenol 3; in response to plaintiff's reports of pain and the ineffectiveness of Tylenol 3, defendants secured and provided quick-release morphine; in response to plaintiff's request to see a doctor, prison staff took plaintiff to the UCD ENT Clinic on March 22; most of the defendant nurses attended to plaintiff for just one or two days; neither the defendant nurses nor defendant correctional officer Auer had the authority to provide plaintiff with pain medication not prescribed by a physician; and plaintiff's amended complaint simply expresses disagreement with the prescribed course of medical treatment. (Id. at 6-8.) With respect to qualified immunity, defense counsel contends that not only has plaintiff alleged "no facts" that the named defendants violated a constitutional right, but also that "[a] reasonable person in their position would have believed that not providing different pain medication over the course of one week for [plaintiff's] post-operative pain was lawful, because it was not medically necessary." (Id. at 9.)

## APPLICABLE LEGAL STANDARDS

**I.  Motion to Dismiss Pursuant to Rule 12(b)(6)**

A motion to dismiss brought pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. North Star Int'l v. Arizona Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). Dismissal of the complaint, or any claim within it, "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). See also Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984). In order to survive dismissal for failure to

state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

In determining whether a pleading states a claim, the court accepts as true all material allegations in the complaint and construes those allegations, as well as the reasonable inferences that can be drawn from them, in the light most favorable to the plaintiff. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Hosp. Bldg. Co. v. Trustees of Rex Hosp., 425 U.S. 738, 740 (1976); Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989). In the context of a motion to dismiss, the court also resolves doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, the court need not accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact. W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

In general, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). The court has an obligation to construe such pleadings liberally. Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). However, the court's liberal interpretation of a pro se complaint may not supply essential elements of the claim that were not pled. Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982); see also Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992).

**II. The Eighth Amendment and Inadequate Medical Care**

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The "unnecessary and wanton infliction of pain" constitutes cruel and unusual punishment prohibited by the United States Constitution. Whitley v. Albers, 475 U.S. 312, 319 (1986). See also Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley, 475 U.S. at 319.

/////

What is needed to show unnecessary and wanton infliction of pain "varies according to the nature of the alleged constitutional violation." Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citing Whitley, 475 U.S. at 320). To prevail on an Eighth Amendment claim the plaintiff must allege and ultimately show that objectively he suffered a "sufficiently serious" deprivation. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Wilson v. Seiter, 501 U.S. 294, 298-99 (1991). The plaintiff must also allege and show that subjectively each defendant had a culpable state of mind in allowing or causing the plaintiff's deprivation to occur. Farmer, 511 U.S. at 834.

It is well established that "deliberate indifference to serious medical needs of prisoners constitutes 'unnecessary and wanton infliction of pain.'" Estelle, 429 U.S. at 104; McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc). In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in which prison officials provide medical care. Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988). Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, however, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06).

**III. Qualified Immunity**

Government officials enjoy qualified immunity from civil damages unless their conduct violates clearly established statutory or constitutional rights. Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001). When a court is presented with a qualified immunity defense, the central questions for the court are: (1) whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was "clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001).

The United States Supreme Court has held that "while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory." Pearson v. Callahan, 555 U.S. 223,

6

236 (2009). If a court decides that plaintiff's allegations do not make out a statutory or constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201. Likewise, if a court determines that the right at issue was not clearly established at the time of the defendant's alleged misconduct, the court may end further inquiries concerning qualified immunity at that point without determining whether the allegations in fact make out a statutory or constitutional violation. Pearson, 555 U.S. 236-242.

"A government official's conduct violate[s] clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" Ashcroft v. al-Kidd, ___U.S. ___, ___, 131 S. Ct. 2074, 2083 (2011) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). In this regard, "existing precedent must have placed the statutory or constitutional question beyond debate." Id. See also Clement v. Gomez, 298 F.3d 898, 906 (9th Cir. 2002) ("The proper inquiry focuses on . . . whether the state of the law [at the relevant time] gave 'fair warning' to the officials that their conduct was unconstitutional.") (quoting Saucier, 533 U.S. at 202). The inquiry must be undertaken in light of the specific context of the particular case. Saucier, 533 U.S. at 201. Because qualified immunity is an affirmative defense, the burden of proof initially lies with the official asserting the defense. Harlow, 457 U.S. at 812.

## ANALYSIS

The undersigned finds that, accepting plaintiff's allegations as true and construing those allegations in the light most favorable to plaintiff, plaintiff has sufficiently stated a cognizable Eighth Amendment claim against defendants Auer, Freitas, King, Molina, Mwai, Okoroike, and Riggs. There are sufficient factual allegations in the amended complaint to put defendants on notice as to the nature of plaintiff's claim that he was provided constitutionally inadequate medical care. Specifically, plaintiff has alleged facts concerning the dates of the alleged inadequate medical treatment, the involvement of each defendant in the alleged constitutional violation, and the pain plaintiff experienced as a result.

The undersigned also finds that defendants are not entitled to qualified immunity. Viewing the facts alleged in plaintiff's amended complaint in the light most favorable to plaintiff,

a reasonable jury could conclude that these defendants were deliberately indifferent to his serious medical needs. Moreover, at the time of the alleged constitutional violations in this case, "the general law regarding the medical treatment of prisoners was clearly established," and "it was also clearly established that [prison staff] could not intentionally deny or delay access to medical care." Clement, 298 F.3d at 906. In this regard, at the time of the alleged incidents the defendants knew, or certainly should have known, that failing to provide plaintiff with adequate and effective pain medication following his surgery would violate the Eighth Amendment. Accordingly, defendants' motion to dismiss plaintiff's amended complaint based on the affirmative defense of qualified immunity should be rejected as well.

On a motion to dismiss, "'[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.'" Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). In this case, the court finds that, liberally construed, plaintiff's complaint alleges sufficient facts to plausibly suggest that he is entitled to relief under the Eighth Amendment. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) ("we continue to construe pro se filings liberally when evaluating them under Iqbal"); al-Kidd v. Ashcroft, 580 F.3d 949, 977 (9th Cir. 2009) ("'Asking for plausible grounds to infer' the existence of a claim for relief 'does not impose a probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence' to prove that claim.") (quoting Twombly, 550 U.S. at 556), rev'd on other grounds by Ashcroft v. al-Kidd, ___U.S. ___, 131 S. Ct. 2074 (2011).

If plaintiff proves the factual allegations of his amended complaint to be true, he has a reasonable opportunity to prevail on the merits of this action. See Estelle, 429 U.S. at 104-05 (1976) (deliberate indifference may manifest "by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or

intentionally interfering with the treatment once prescribed"); Lopez v. Smith, 203 F.3d 1122, 1132 (9th Cir. 2000) (en banc) ("A prisoner need not prove that he was completely denied medical care."); Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989) ("'access to medical staff is meaningless unless that staff is competent and can render competent care'") (quoting Cabrales v. County of Los Angeles, 864 F.2d 1454, 1461 (9th Cir. 1988), vacated on other grounds by County of Los Angeles v. Cabrales, 490 U.S. 1087 (1989), reinstated 886 F.2d 235 (9th Cir. 1989)).

Accordingly, defendant's motion to dismiss plaintiff's amended complaint for failure to state a cognizable Eight Amendment deliberate indifference claim should be denied.

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that defendants' motion to dismiss (ECF No. 25) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 11, 2014

_Dale A. Drozd_
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

Dad1.civilrights
Kilgore11cv1745.mtd